# -2003 DTA 127

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN, PANEL ESPECIAL IV

RUBEN VELEZ LEBRON, ETC.
Apelantes-Demandantes

v.

JUAN MANUEL GARCIA PASSALACQUA, ETC.
Apelados-Demandados

Núm. KLAN-01-01057

San Juan, Puerto Rico, a 31 de julio de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Ortiz Carrión

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 26 de octubre de 2001, Rubén Vélez Lebrón (en adelante Vélez Lebrón) presentó escrito de Apelación y solicitó la revocación de la Sentencia emitida el 10 de agosto de 2001, notificada el 21 de agosto de 2001, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicha sentencia, el Tribunal de Primera Instancia declaró Ha Lugar la moción de sentencia sumaria presentada por Juan Manuel García Passalacqua (en adelante García Passalacqua) y desestimó la demanda presentada por ·Vélez Lebrón.

Por los fundamentos que expondremos, **CONFIRMAMOS** la sentencia recurrida.

## I

Durante el período comprendido entre el 7 de octubre de 1997 y el 29 de agosto del 2000, la prensa local publicó una infinidad de artículos noticiosos referentes a Vélez Lebrón. En síntesis, dichas noticias imputaban a Vélez Lebrón haber establecido un esquema dirigido a controlar las subastas de adquisición de contratos para la privatización de residenciales públicos efectuado en la Isla para el año 1992. Además, informaban sobre la existencia de una cinta de video en la que aparecía Vélez Lebrón durante una actividad celebrada en Casa Blanca allá para el año 1995. En la referida cinta, Vélez Lebrón ofrecía al presidente del Partido Demócrata de los Estados Unidos cinco cheques. Según los referidos artículos, con la entrega de dichos cheques, Vélez Lebrón intentaba detener la investigación iniciada en su contra por el Departamento de Vivienda Federal relacionado con el proceso de privatización. Por versar sobre asuntos asociados a la esfera gubernamental, estas noticias ocuparon la atención de la comunidad en general y provocaron el debate público. ██ A raíz de las mismas, alegadamente García Passalacqua hizo varias expresiones públicas.

En el programa del 2 de septiembre de 1999 del periodista Rubén Sánchez, transmitido por la emisora Noti-Uno, García Passalacqua dijo que Rubén Vélez era *"el principal contribuyente en cash a las arcas del Partido Popular Democrático," "idéntico a aquellos que ya han sido procesados en la Corte Federal en Puerto Rico. Es el mismo Jorge Redondo y es el mismo Yamil Kourí. Son personas que no tienen patria, ... que no tienen decencia... como Redondo, igualito. Redondo es el de los azules y Rubén Vélez el de los coloraos."*

El 21 de agosto de 2000, en el programa *"Analizando con JuanMa,"* transmitido por Noti-Uno, García Passalacqua hizo referencia a Rubén Vélez como *"el ladrón de Rubén Vélez Lebrón"* e hizo referencia a unas acusaciones en contra de éste por haber conspirado para defraudar al gobierno de los Estados Unidos y a un alegado *"pleito contra los criminales, contra los ladrones como Rubén Vélez Lebrón."*

En el programa ·*"Analizando con JuanMa"* del 24 de agosto de 2000, García Passalacqua afirmó *"que Rubén Vélez diseñó el esquema de fraude en Vivienda que sobrevive hoy"* y que éste *"contrató, para que lo protegiera, a Carlos Romero Barceló."* Además, García Passalacqua llamó *"tiburón"* a Vélez Lebrón al reiterar que fue quien diseñó el esquema de fraude en Vivienda y señaló que éste entregó dinero al Presidente de los Estados Unidos para que no lo metiera preso. En ese mismo programa, García Passalacqua expresó que Rubén Vélez era el dirigente de una *"cúpula asquerosa y corrupta que quiere apoderarse del Partido Popular Democrático."*

El 14 de agosto de 2000 en el programa Anda Pa'l Cará que animaba Silverio Pérez y es transmitido por el Canal 11, García Passalacqua dijo que Rubén Vélez era una especie de inversionista político, o palabras a esos efectos, y señaló que en todos los partidos existe esa variante del contribuyente político, al aludir que el Partido Nuevo Progresista tenía a Luis Dubón.

El 30 de agosto de 2000, Vélez Lebrón presentó demanda en daños y perjuicios en contra de García Passalacqua. Vélez Lebrón alegó que García Passalacqua, en su condición de comentarista político y por vía de una emisora radial, ha mantenido un patrón de información falsa, libelosa, calumniosa y difamatoria en contra del demandante por lo menos desde el mes de septiembre de 1999. El 31 de octubre de 2000, García Passalacqua

contestó la demanda. En esencia, García Passalaqcua negó las alegaciones principales de la demanda a los efectos de que las expresiones emitidas fueran falsas, difamatorias o injustificadas en contra de Vélez Lebrón y levantó varias defensas, entre otras, que los temas sobre los cuales versan las expresiones son de interés público por lo cual están constitucionalmente protegidas.

El 30 de noviembre de 2000, García Passalacqua presentó *"Moción de Sentencia Sumaria"* acompañada por un "*Memorando en Apoyo a Moción de Sentencia Sumaria"* y escrito titulado *"Hechos Incontrovertidos en Apoyo a Sentencia Sumaria."* El 18 de diciembre de 2000, Vélez Lebrón solicitó al Tribunal de Primera Instancia término adicional para presentar su oposición a la moción de sentencia sumaria. El 24 de enero de 2001, notificada el 31 de enero de 2001, Instancia concedió a Vélez Lebrón un término de 20 días para que presentara su oposición. Según la orden, esos 20 días serían contados a partir de que transcurrieran los 20 días concedidos para que los interrogatorios, requerimientos de admisión y producción de documentos fueran contestados. El 2 de febrero de 2001, notificada el 9 de febrero de 2001, el tribunal emite una segunda orden para que las partes cumplan con lo ordenado el 24 de enero de 2001. El 17 de mayo de 2001, Vélez Lebrón solicitó término adicional y el 31 de mayo de 2001 solicitó término adicional final para presentar la correspondiente oposición. Sin embargo, Vélez Lebrón no presentó ningún documento en oposición, a pesar de que en dos ocasiones el Tribunal de Primera Instancia concedió un término para la presentación de la misma y a pesar de sus solicitudes posteriores a dicho tribunal.

El 10 de agosto de 2001, notificada el 21 de agosto de 2001, el Tribunal de Primera Instancia emite sentencia mediante la cual declaró Ha Lugar la moción de sentencia sumaria presentada por García Passalacqua y desestimó la demanda. Instancia concluyó que Vélez Lebrón sólo demostró la publicación de las expresiones vertidas por García Passalacqua a los efectos de que el demandante era un *"tiburón"* y un *"inversionista político"* y que las mismas eran opiniones e hipérboles retóricas que no constituian expresiones difamatorias o calumniosas.

El 23 de agosto de 2001, Vélez Lebrón solicitó reconsideración. En la misma, Vélez Lebrón solicitó al Tribunal de Primera Instancia que aceptara, a modo de reconsideración, la oposición a la solicitud de sentencia sumaria que acompañaba con el escrito. El 27 de agosto de 2001, García Passalacqua presentó oposición a la solicitud de reconsideración. El 31 de agosto de 2001, Vélez Lebrón presentó moción en la que solicitó determinaciones adicionales de hechos y el 5 de septiembre de 2001 presentó un escrito en suplemento a la solicitud de reconsideración. █ El 20 de septiembre de 2001, notificada el 25 de septiembre de 2001, Instancia deniega la solicitud de determinaciones adicionales de hechos presentada por Vélez Lebrón.

El 25 de octubre de 2001, Vélez Lebrón compareció ante este Tribunal mediante escrito de apelación y nos solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia. Vélez Lebrón alegó que erró Instancia al determinar que no estuvo presente el requisito de publicación en varias de las expresiones al concluir que las expresiones vertidas por García Passalacqua, que sí fueron publicadas, constituyen hipérboles retóricas o expresiones de su opinión y al desestimar la demanda. El 26 de octubre de 2001, Vélez Lebrón presentó moción y solicitó que ordenáramos la elevación de parte de la prueba presentada ante el Tribunal de Primera Instancia, específicamente el Anejo 2 (d) del *"Suplemento a la Moción en Solicitud a Reconsideración"* compuesto de 15 cintas de audio enumeradas del 1 al 15 que contienen grabadas las expresiones de García Passalacqua. Finalmente, el 26 de noviembre de 2001, García Passalacqua presentó su alegato.

## II

Según surge de los hechos procesales mencionados anteriormente, Vélez Lebrón presentó su escrito en oposición a sentencia sumaria luego de que el Tribunal de Primera Instancia emitiera sentencia y para que dicho tribunal aceptara la misma como una solicitud de reconsideración. Por tal motivo, como paso previo a cualquier discusión ulterior, es necesario discutir lo que provee nuestra jurisprudencia en relación a los mecanismos procesales de sentencia sumaria y reconsideración.

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, autoriza a un tribunal a emitir sentencia sumariamente cuando no existe *"controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente."* Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop v. Purcell,* 117 D.P.R. 714, 720 (1986).

La sentencia sumaria es un mecanismo extraordinario y discrecional que procede cuando la parte promovente demuestra al tribunal que no existe necesidad de celebrar una vista evidenciaria en el caso en su fondo. Como regla general, los tribunales emiten sentencia sumariamente a base de los documentos admisibles en evidencia sometidos por el promovente con su moción, los documentos sometidos por la parte promovida en su moción en oposición y aquéllos que obran en el expediente del tribunal, *Luán Investment, Corp. v. Rexach Construction Co., Inc.,* ___ D.P.R. ___ (2000), **2000 J.T.S. 196**, página 553; *Hernández Villanueva v. Hernández,* ___ D.P.R. ___ (2000), **2000 J.T.S. 26**, página 608; *Pérez Rosado v. El Vocero de Puerto Rico, Inc.,* ___ D.P.R. ___ (1999), **99 J. T.S. 160**, página 266; *García Díaz v. Darex Puerto Rico, Inc.,* ___ D.P.R. ___ (1999), **99 J.T.S. 84**, página 1058; *Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico,* 135 D.P.R. 716, 726 (1994).

La moción de sentencia sumaria obliga a la parte promovente a presentar la prueba que ésta utilizará en el juicio para apoyar una alegación. Su efecto real es adelantar incidentes que podrían ocurrir en el juicio. A través de este mecanismo, el tribunal puede considerar prueba que, de no ser adecuadamente refutada, permite la disposición del pleito a favor de alguna de las partes. *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279 (1990).

La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, procede que el tribunal emita sentencia a su favor. Entonces, la parte opositora está en posición de controvertir los hechos presentados por el promoverte. *García Rivera v. Enríquez Marín,* ___ D.P.R. ___ (2001), **2001 J.T.S. 15**, página 820; *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico,* ___ D.P.R. ___ (2000), **2000 J.T.S. 33**, página 681; *Pilot Life Insurance Company v. Crespo Martínez,* 136 D.P.R. 624, 632 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y sostenida en la forma provista por la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no puede descansar en las aseveraciones o negaciones contenidas en su demanda. Dicha parte viene obligada a contestar la moción en forma tan detallada y específica, como lo hubiere hecho la parte promovente, y también viene obligada a exponer los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. Además, como regla general, el opositor debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. De no hacerlo y si procediere en derecho, el tribunal debe emitir sentencia sumaria en su contra, Regla 36 de Procedimiento Civil, *supra. Piñero González v. Autoridad de Acueductos y Alcantarillados,* ___ D.P.R. ___ (1998), **98 J.T.S. 140**, página 216; *Audiovisual Language v. Sistema de Estacionamientos Natal Hermanos,* 144 D.P.R. 563, 576 (1997); *PFZ Properties v. General Accident Insurance Corp.,* 136 D.P.R. 881, 912-913 (1994); *J.A.D.M. v. Centro Comercial Palza Carolina,* 132 D.P.R. 785, 802 (1993); *Mercado Vega v. U.P.R.,* 128 D.P.R. 273, 281 (1991); *Tello, Rivera v. Eastern Airlines, supra,* página 87.

De existir una disputa de hechos *bona fide*, no procede que los tribunales emitan sentencia sumariamente. Cualquier duda sobre la existencia de una controversia de hechos debe ser resuelta contra la parte que solicita la sentencia sumaria. Por lo tanto, sólo cuando los casos resulten claros, o sea, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes, es que procede que los tribunales emitan sentencia sumariamente. *Management Administration Services Corp. v. Estado Libre Asociado de Puerto Rico,* ___ D.P.R. ___ (2000), **2000 J.T.S. 189**, página 440; *Hernández Sánchez v. Bermúdez & Longo, S.E.,* ___ D.P.R. ___ (1999), **99 J.T. S. 162**, página 285; *Rivera Rodríguez v. Departamento de Hacienda,* ___ D.P.R. ___ (1999), **99 J.T.S. 144**, página 53; *Cuadrado Lugo v. Sup. Amigo, Inc.,* 126 D.P.R. 117, 134 (1990).

Sin embargo, no es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria en aquellos casos donde haya elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. Por su propia naturaleza, ciertos litigios y controversias no hacen deseable o aconsejable el resolverlos mediante una sentencia emitida sumariamente debido a que, en los mismos, difícilmente el tribunal pueda reunir ante sí toda la verdad de los hechos a través de declaraciones juradas o deposiciones. Ello es así, porque en dichos casos la credibilidad juega un papel esencial, sino decisivo, para llegar a la verdad y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 301 (1994); *Rodríguez Meléndez v. Sup. Amigo, Inc., supra*, páginas 134-135; *García López v. Méndez García*, 88 D.P.R. 363, 380 (1963). No obstante, el mecanismo de sentencia sumaria es especialmente deseable en aquellos casos en que está envuelta la libertad de expresión, pues la prolongación de estos pleitos puede tener un efecto paralizante o disuasivo sobre el ejercicio de este derecho fundamental. *Méndez Arocho v. El Vocero de P.R.,* 130 D.P.R. 867, 874 (1992).

Por otra parte, la reconsideración, Regla 47 de Procedimiento Civil, 31 L.P.R.A. Apéndice III, Regla 47, es el mecanismo que provee nuestro ordenamiento procesal para que el tribunal sentenciador pueda modificar su fallo. *Castro v. Sergio Estrada Auto Sales, Inc.,* 149 D.P.R. _____ (1999), **99 J.T.S. 147**, página 72. La Regla 47, *supra*, persigue dos propósitos, a saber: por un lado, dar una oportunidad al tribunal sentenciador para que pueda corregir cualquier error que haya cometido al emitir una sentencia; por el otro, evitar que el medio procesal de la reconsideración sea utilizado como una vía para dilatar injustificadamente la ejecución de un dictamen judicial. *Reyes Díaz v. Estado Libre Asociado de Puerto Rico,* _____ D.P.R. _____ (2001), **2001 J.T.S. 171**, página 531; *Dumont v. Inmobiliaria Estado, Inc.,* 113 D.P.R. 406, 413 (1982).

Ahora bien, en una moción de reconsideración no deben ser alegados nuevos hechos que no fueron considerados por el tribunal cuando emitió la sentencia cuya reconsideración es solicitada, a menos que el promovente exprese razones poderosas que constituyan una excusa razonable para no haberlo hecho antes. *Fantauzzi Rivera v. E.L.A.,* 111 D.P.R. 124, 126 (nota al pie 2); *Cividanes v. López Acosta*, 22 D.P.R. 79, 83 (1915); José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo II, **Publicaciones J.T.S.,** 2000, página 765. En este sentido, al solicitar la reconsideración de una sentencia, el promovente puede exponer nuevos argumentos que no fueron expuestos antes de que la sentencia fuera emitida, pero no puede formular por primera vez planteamientos que necesiten apoyo en nueva evidencia, Rafael Hernández Colón, *Derecho Procesal Civil*, Michie de Puerto Rico, 1997, página 294.

### III

En el caso ante nuestra consideración, García Passalaqcua presentó la moción para que el tribunal emitiera sentencia sumariamente el 30 de noviembre de 2000. El 18 de diciembre de 2000, Vélez Lebrón solicitó término para presentar su oposición. El 24 de enero de 2001, el Tribunal de Primera Instancia emitió orden y concedió a Vélez Lebrón el término solicitado. Posteriormente, el 2 de febrero de 2001, Instancia ordenó a las partes a cumplir con la orden del 24 de enero de 2001. Vélez Lebrón no cumplió con las órdenes emitidas por el Tribunal de Primera Instancia. Así las cosas, el 17 de mayo de 2001 y el 31 de mayo de 2001, Vélez Lebrón vuelve a solicitar la concesión de un término adicional para contestar la moción de sentencia sumaria. Sin embargo, Vélez Lebrón no presentó ningún documento en oposición a la sentencia sumaria presentada. El 10 de agosto de 2001, el tribunal emite sentencia y desestima sumariamente la reclamación presentada por Vélez Lebrón. Esto ocurre seis meses después de que el tribunal concediera el término para contestar la oposición y casi dos meses después de que Vélez Lebrón solicitara por última vez la concesión de un término adicional para presentar el mencionado escrito. En suma, una vez García Passalacqua presentó su moción de sentencia sumaria, transcurrió un período de seis meses sin que Vélez Lebrón presentara su oposición a la misma. Este, a pesar de las oportunidades concedidas, no presentó la referida oposición. No es hasta que el Tribunal de Primera Instancia emite la sentencia cuando Vélez Lebrón solicita, vía reconsideración, que dicho tribunal acoja la oposición a la moción de sentencia sumaria. En dicho escrito, la representación legal de Vélez Lebrón alegó que cualquier dilación o falta de presentación del mencionado documento fue debido a una inadvertencia imputable a éste y no a su representado.

A su vez, acompañó la oposición a la sentencia sumaria. En síntesis, en dicha oposición Vélez Lebrón alegó que la mayoría de los hechos alegados no encontraban apoyo en la prueba presentada e hizo referencia a 15 cintas de audio que contienen grabadas las expresiones de García Passalacqua.

De lo anterior, surge que la moción de reconsideración acompañada de la oposición a la moción de sentencia sumaria constituyó un intento de Vélez Lebrón para que el Tribunal de Primera Instancia considerara los argumentos que debió de haber presentado oportunamente, esto es, una vez García Passalacqua presentó su moción y el tribunal ordenó que la oposición fuera presentada. En ese momento era cuando Vélez Lebrón venía obligado a contestar detalladamente los hechos que demostraran la existencia de una controversia real sobre los hechos. Vélez Lebrón no lo hizo y corrió el riesgo de que el tribunal emitiera sentencia en su contra sin la celebración de un juicio. Como vemos, el Tribunal de Primera Instancia entendió que no existía controversia sobre los hechos del caso. Estamos en la misma posición que dicho tribunal y examinada la solicitud de sentencia sumaria, resolvemos que en el presente caso no existen controversias de hechos sustanciales que recaigan sobre los hechos materiales que de alguna manera hubieran impedido al Tribunal de Primera Instancia emitir la sentencia sumaria solicitada.

Cuando García Passalacqua presentó su prueba incontrovertida, Vélez Lebrón venía obligado a presentar prueba que controvirtiera la presentada por aquél. Vélez Lebrón tenía el deber de presentar prueba, en la etapa de la sentencia sumaria, sobre hechos materiales respecto a los cuales existía controversia real sustancial y que de ser probada en un juicio plenario, establecerían la existencia de los mismos. Sin embargo, fue en la etapa de reconsideración cuando Vélez Lebrón alegó nuevos *"hechos materiales omitidos."* ▇ En su misiva, éste no expuso los argumentos por los cuales no presentó los mismos anteriormente. Sus planteamientos iban dirigidos a evidenciar el elemento de publicación de las expresiones vertidas por García Passalacqua. Dicha evidencia correspondía presentarla antes de que el Tribunal de Primera Instancia emitiera sentencia, no después. Basta con señalar que la reconsideración es un mecanismo que tiene el propósito de permitir que el tribunal corrija cualquier error que haya cometido en la sentencia, no es para formular por vez primera planteamientos que necesiten apoyo en prueba no presentada.

Por otra parte, no nos convence la alegación de la representación legal de Vélez Lebrón a los efectos de que cualquier dilación o falta de presentación de la oposición a la solicitud de sentencia sumaria fue debido a una inadvertencia imputable a éste y no a su representado.

Aunque en *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 498, 499, el Tribunal Supremo estableció que cuando una parte no está enterada de la actuación negligente de su abogado no puede ser despojada injustificadamente de su causa de acción, entendemos que dicha determinación no puede constituir una llave maestra que permita la reapertura de casos. La alegación de que un caso fue desestimado o una defensa eliminada, por causas solamente atribuibles al abogado en fechas recientes, frecuentemente ha sido utilizada como una justificación a la falta de diligencia en la tramitación de los casos. En sus escritos, los abogados alegan que no es justo para un cliente que el tribunal desestime su causa de acción o su defensa a causa de un error o inadvertencia que es sólo imputable al abogado. Sin embargo, no creemos que los abogados que litigan ante nuestro foro sean, a tal extremo, negligentes. Sí estamos convencidos de que este fundamento ha sido utilizado como una puerta de escape a los procedimientos y determinaciones judiciales. Ello constituye una práctica que bajo las circunstancias particulares de este caso, no vamos a permitir. En resumen, el foro debe saber que esta práctica que ha sido utilizada casi rutinariamente, en fechas recientes, no puede ser usada como válvula para lograr variar las determinaciones judiciales. ▇

Con esto en mente, pasemos a analizar los señalamientos traídos ante nos. Vélez Lebrón alegó que el Tribunal de Primera Instancia erró al determinar que no estuvo presente el requisito de publicación en varias de las expresiones vertidas por García Passalaqcua, al concluir que las expresiones que sí fueron publicadas constituyen hipérboles retóricas o expresiones de su opinión y al desestimar la demanda.

## IV

La acción por difamación enfrenta dos derechos constitucionales de la más alta jerarquía: el derecho a la libertad de expresión y de prensa y el derecho a la intimidad. En consecuencia, estos casos requieren que el juzgador haga un delicado balance de intereses. Por un lado está el interés de la ciudadanía en estar debidamente informada y de fomentar un debate vigoroso sobre las cuestiones de interés público; por el otro, están la protección contra ataques abusivos a la honra, la reputación, la vida privada y familiar y la inviolabilidad de la dignidad del ser humano. *Pérez Rosado v. El Vocero de P.R., Inc.,* ___ D.P.R. ___ (1999), **99 J.T.S. 160**, página 265.

Para que prospere una acción por difamación es necesario probar: (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente, y (4) si el demandante es una figura pública, hay que demostrar que las expresiones fueron hechas con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no. *Pérez Rosado v. El Vocero de P.R., Inc., supra,* página 265; *Garib Bazain v. Clavell,* 135 D.P.R. 475, 482 (1994); *Méndez Arocho v. El Vocero de P.R., supra,* páginas 877-878 (1992).

Uno de los elementos esenciales de la causa de acción por libelo lo es la publicación de la expresión falsa y difamatoria. La publicación queda configurada cuando la expresión difamatoria es comunicada a una tercera persona, distinta de la que es difamada. Por ello, las expresiones difamatorias hechas a la propia persona difamada no constituye publicación, a menos que un tercero quede enterado de la comunicación. Tampoco existe publicación cuando es la propia persona afectada quien comunica la expresión difamatoria a terceros. *Porto y Siurano v. Bentley P.R., Inc.,* 132 D.P.R. 331, 346-347 (1992).

En relación con el tipo de expresión que está sujeta a una acción de difamación, el Tribunal Supremo de Puerto Rico ha adoptado las doctrinas de la hipérbole retórica y de la opinión originadas por el Tribunal Supremo Federal. Según la regla de la hipérbole retórica, una expresión alegadamente difamatoria no es accionable si la misma es utilizada en sentido figurativo y flexible, y no necesariamente por su significado literal. Al igual que la hipérbole retórica, las opiniones son un tipo de expresión cuya certeza es muy difícil de precisar. Por ello, una expresión de opinión relativa a cuestiones de interés público que no contenga una connotación fáctica, que sea susceptible de ser probada como falsa, recibirá total protección constitucional. Las expresiones protegidas serán aquéllas que no pueden ser razonablemente interpretadas como que expresan hechos reales sobre un individuo. Esto asegura que el debate público no sufrirá por falta de expresión imaginativa o de la hipérbole retórica. *Garib Bazain v. Clavell, supra,* páginas 486-490.

## V

En el presente caso, Vélez Lebrón alegó que el Tribunal de Primera Instancia erró al desestimar la demanda a pesar de que estaban presentes una serie de elementos subjetivos y de intención los cuales debieron haber sido considerados en una vista evidenciaria. El elemento subjetivo o de intención al cual hace referencia Vélez Lebrón es la presencia de malicia real en las expresiones vertidas por García Passalacqua.

Sin embargo, de los hechos y los documentos que obran en autos, así como del escrito de apelación presentado ante nos, surge que los hechos en los cuales Vélez Lebrón fundamenta su reclamación no están en controversia. Lo que éste alega que está en controversia es el hecho de si cuando García Passalacqua emitió sus expresiones actuó o no con malicia real. Para que prosperara la acción por calumnia, era necesario que Vélez Lebrón probara que la información publicada era falsa, los daños sufridos a causa de dicha publicación, y si el demandante es figura pública- como ciertamente lo es Vélez Lebrón-, demostrar que las expresiones fueron hechas con malicia real, esto es, a sabiendas de que era falso o con grave menosprecio de si era falso o no. El Tribunal de Primera Instancia determinó que Vélez Lebrón no estableció el elemento de publicación de algunas de las expresiones vertidas por García Passalacqua, por lo que su reclamación no prosperó. En palabras del propio tribunal, *"no hubo indicio probatorio alguno que permit[iera] al tribunal determinar que los demandantes han*

*cumplido con el requisito esencial de publicación."* ■ De los interrogatorios, requerimientos de admisiones y producción de documentos que el Tribunal de Primera Instancia tuvo ante sí no surgió prueba tendente a establecer los elementos requeridos para que una reclamación por difamación fuera accionable. En ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con dicha determinación.

En su segundo señalamiento de error, Vélez Lebrón señaló que el Tribunal de Primera Instancia erró al determinar que los apelantes no lograron establecer el requisito de publicación. Para que la publicación quede configurada es necesario que la expresión difamatoria sea comunicada a una tercera persona, distinta de la que es difamada. Vélez Lebrón incumplió con su deber probatorio de colocar al tribunal en posición de determinar que el requisito de publicación había sido establecido. No demostró que las aseveraciones por las cuales reclamaba habían sido en efecto publicadas. Luego de examinar la evidencia presentada, Instancia determinó que solamente el requisito de publicación estuvo presente en dos aseveraciones (*"tiburón"* e *"inversionista político"*), y ello porque García Passalacqua formuló admisión a tales efectos.

En lo que respecta específicamente a las expresiones que fueron publicadas, Vélez Lebrón alegó que el Tribunal de Primera Instancia erró al determinar que las expresiones vertidas por García Passalacqua constituyen hipérboles retóricas o expresiones de su opinión. En virtud de tal señalamiento, procede el análisis individualizado de cada una de las expresiones.

De la declaración jurada que acompañó la moción de sentencia sumaria presentada por García Passalacqua surge que éste aceptó haber llamado *"tiburón"* a Vélez Lebrón debido a la alegada voracidad de este último en asuntos en que él y sus corporaciones salen bien. El examen de las numerosas publicaciones noticiosas permiten formar la impresión de que Vélez Lebrón obtuvo beneficios de sus influencias en el gobierno de Puerto Rico y de esta forma pudo asegurar varios contratos de administración de los residenciales públicos. La mayoría de dichas publicaciones permiten al lector promedio llegar a la conclusión de que Vélez Lebrón utilizó indebidamente sus influencias en los Estados Unidos y de esta forma prevenir las investigaciones en relación con la privatización de los residenciales públicos. Por ello, la expresión *"tiburón"* constituye una hipérbole retórica no accionable bajo una reclamación de difamación. La palabra no fue más que un epíteto vigoroso utilizado por los que consideran que la acción de Vélez Lebrón era una irrazonable, con el propósito de comunicar otro mensaje más allá del sentido literal de las palabras. La misma fue utilizada en forma figurativa para demostrar la desaprobación a las acciones de Vélez Lebrón.

En cuanto a la expresión *"inversionista político"*, ésta constituye su opinión sobre la persona de Vélez Lebrón. De la cadena de informaciones noticiosas relacionadas con la controversia ante nos, particularmente el asunto de los cinco cheques, cualquier ciudadano promedio podría concluir que Vélez Lebrón era en efecto una persona que activamente invertía en un partido político. Las publicaciones noticiosas tienden a apoyar el hecho de que Vélez Lebrón ciertamente invierte en el Partido Demócrata. La video cinta tiende a demostrar que Vélez Lebrón mantiene una estrecha relación con el Partido Demócrata. Nada en el récord contradice esta posición. La expresión es una frase que cataloga a Vélez Lebrón, por lo que constituye una mera opinión subjetiva de García Passalacqua que no denota hecho alguno cuya verdad pueda ser determinable sobre una base objetiva de prueba.

En resumen, surge que ninguna de las expresiones alegadamente difamatorias sostienen una causa de acción en este caso. La primera de ellas es catalogada como hipérbole retórica que ningún ciudadano promedio las interpretaría como una aseveración fáctica por parte de García Passalacqua. La segunda expresión es una opinión cuya certeza no es fáctica y objetivamente determinable.

## VI

En virtud de los fundamentos que anteceden, **CONFIRMAMOS** la Sentencia apelada.

El Juez Ortiz Carrión concurre con el resultado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 127**

**1.** Véase las determinaciones de hechos de la sentencia apelada emitida por el Tribunal de Primera Instancia el 10 de agosto de 2001, páginas 280-302, según apéndice del escrito de apelación.

**2.** Dicho suplemento contenía los mismos señalamientos de la oposición presentada.

**3.** Véase página 309, según Apéndice del escrito de Apelación.

**4.** Obviamente, ante tal situación, Vélez Lebrón tiene el remedio de demandar a su abogado por impericia profesional.

**5.** Página 299, según apéndice del escrito de apelación.